Jerome **ROSENBERG**, Plaintiff-Appellee,

v.

Raymond V. **MARTIN**, Defendant-Appellant.

No. 649, Docket 72-2262.

United States Court of Appeals, Second Circuit.

Submitted March 28, 1973.

Decided April 27, 1973.

Jerome Rosenberg, plaintiff-appellee, pro se.

Norman Redlich, Corp. Counsel of New York City (Stanley Buchsbaum, and Bernard Burstein, New York City, of counsel), for defendant-appellant.

Before FRIENDLY, Chief Judge, LUMBARD, Circuit Judge, and THOMSEN,* District Judge.

FRIENDLY, Chief Judge:

Jerome Rosenberg, the successful plaintiff in this civil rights action under 42 U.S.C. § 1983 in the District Court for the Eastern District of New York, had been convicted, upon the testimony of several eyewitnesses, of the felony murder of. two police officers while he was engaged in an armed robbery of the Borough Park Tobacco Company in Brooklyn. After the Governor had commuted his death sentence to life imprisonment, his conviction and that of a codefendant were affirmed by the New York Court of Appeals, People v. Portelli and Rosenberg, 15 N.Y.2d 235, 257 N.Y.S.2d 931, 205 N.E.2d 857 (1965).[1] One of the contentions on that appeal was that the defendants' constitutional rights had been violated by denial of their motion for a change of venue because of prejudicial publicity, and the Court of Appeals amended its remittitur to show that it had considered this argument and had held that "no constitutional rights of appellants had been violated." 16 N.Y.2d 537, 260 N.Y.S.2d 649, 208 N.E.2d 458 (1965). The Supreme Court denied certiorari, Rosenberg v. New York, 382 U.S. 1009, 86 S.Ct. 612, 15 L.Ed.2d 1009 (1966). A petition for federal habeas corpus by Rosenberg on the ground that the pre-trial publicity had denied him a fair trial was denied by Judge Bartels, without an evidentiary hearing, in an unreported opinion, and we affirmed. United States ex rel. Rosenberg v. Mancusi, 445 F.2d 613 (2 Cir. 1971), cert. denied, 405 U.S. 956, 92 S.Ct. 1186, 31 L.Ed.2d 234 (1972).

On April 15, 1968,[1a] Rosenberg brought this action under section 1983 against three defendants. The only one who remained in the case after the grant of dismissal motions was Raymond V. Martin, a retired Assistant Chief Inspector of Police. Rosenberg's complaint alleged. that Martin had "caused him to be convicted, by illegal means in lying and inflaming the public about [him] through various News Media," and had deliberately fed the news media false information "to slander and influence the courts, people and general public against [him]." Martin served an answer denying these allegations and pleading the statute of limitations as an affirmative defense. Plaintiff, who has been appearing pro se throughout, countered, on December 1, 1969 with a "cross-defense" arguing that Martin's defense was "void and defeated"; he annexed a "supplement pleading" wherein. he moved that "this pleading be amended" under F.R.Civ.P. 15(c) in various

---

* Of the District Court for the District of Maryland, sitting by designation.

1. A mis-trial had been declared as to a third defendant, Dellernia, whose role was allegedly to assist in the get-away but who drove off at the sound of gunfire. He was subsequently acquitted.

1a. The complaint was not formally filed by the Clerk of the District Court until May 20, 1968, because filing had to await Judge Mishler's disposition of Rosenberg's motion for leave to proceed in forma pauperis, which was received along with the complaint. This motion was granted on May 20, and the complaint filed. Judge Dooling held, however, that "The action must be treated as commenced on April 15, 1968, when the Clerk of Court received the complaint." We agree.

respects, including the statement of a claim of assault set forth in the margin.[2] Without having expressly acted on the motion to amend, the court, on May 11, 1970, struck the defense of the statute of limitations, citing Swan v. Board of Higher Education, 319 F.2d 56, 59 (2 Cir. 1963), which had held the six-year provision of former N.Y. Civil Practice Act § 48(2) to be applicable to actions under 42 U.S.C. § 1983. At the trial the court allowed plaintiff to present testimony on both claims and instructed the jury that he could recover on either.

The crime occurred on May 18, 1962. As would be expected in a case where two officers had been killed while discharging their duty, the full force of the police was brought to bear on finding the offenders. It is undisputed that there was extensive news coverage of the murder, the police investigation, and the apprehension of the suspected killers, and that the police were largely responsible for this. Rosenberg was unable to establish, however, that anything like all of the publicity was attributable to Martin. The first newspaper received in evidence was an issue of The New York Daily News for May 22, 1962, reporting Portelli's arrest in Chicago on May 21. A reporter from the News identified portions of the article as having emanated from Martin. These included statements that Rosenberg was the man who had accompanied Portelli into the Borough Park Tobacco Company and had rushed out, over the bodies of the two detectives, after the murder; that both Portelli and Rosenberg had been identified by a half dozen witnesses from their rogues' gallery photos; and that Portelli, Rosenberg and Dellernia were members of a top hoodlum element and formed part of a stick-up mob in Brooklyn. In a set of excerpts from the News of May 23, after Dellernia had surrendered, Martin was referred to as saying that Rosenberg reportedly had been seen in Manhattan, dressed in women's clothing; that the police had the gun used in the killing and bullets to match; and that the police had positive identification of the three men in ten other Brooklyn holdups.

Late in the evening of May 23 Rosenberg turned himself in at the office of the News. He testified that Martin and other officers arrested him there and that Martin stated before the television cameras covering the scene that he was the killer and that he had a criminal record. Rosenberg was then removed to the 66th Precinct station house in Brooklyn. He testified that he was taken out of the police car a half block away from the station, where television cameras and newsmen were lined up on the street; that, as he was dragged toward the cameras, Martin said "He is the killer, and he is going to burn"; and that he later saw video tapes of the scene, of Martin's remark, and of the crowd's angry response.[3] Photographs of the booking of the three men, published in unidentified newspapers, were also received in evidence.

As to the assault claim, Rosenberg testified that at the police station he was brought into a small interrogation room, where Martin and a number of other officers began questioning him. When he refused to answer questions, he testified, "Martin started kicking me," though "just softly." Later, "He grabbed my throat and he started choking me"—though this was "slight" and "did no real physical damage"—and told him that "you're going to suffer as best we could make you suffer." Rosenberg claimed that after a few hours of unsuccessful interrogation, Martin "placed his hand on my ear, like a suction-cup" and

2. Defendant also assaulted plaintiff while handcuffed various times causing an infliction of harm to the left ear internally causing loss of hearing, at time of interrogation on May 23, 1962.

3. There was other testimony of extensive television coverage of the murder and the ongoing investigation, but the extent to which these were incidents for which Martin may have been responsible apparently was not brought out.

then quickly pulled it away; that his ear started to bleed; and that after a week he could no longer hear out of it. Martin denied having taken any such actions, and there was no evidence that Rosenberg had ever brought the alleged assault to anyone's attention.

The judge instructed that if plaintiff proved either that he was physically abused and maltreated while in custody or that he "was the object of prejudicial publicity that went beyond the police needs of the situation" he was entitled to recover damages, provided that Martin was acting under color of state law, custom or usage. The judge fleshed out the prejudicial publicity claim by charging that while the police were entitled to publicize the fact of a crime and "such information as is reasonably related to the task of locating the suspect and taking him securely into custody," it was for the jury to say:

> on all the evidence you have heard whether or not you are satisfied that the publications that occurred between the date of the crime and the date of the plaintiff's trial chargeable to the defendant Martin himself, exceeded the limits of proper police procedure and was prejudicial to the plaintiff in exposing him to defamation, misrepresentation and public obloquy that might have affected his right to a fair trial and that subjected him to personal humiliation and apprehension or bodily harm.

The jury returned a general verdict of $7,500.

█ It is elementary that, in order to recover damages in an action under 42 U.S.C. § 1983 in a case like this, the plaintiff must show a deprivation of *constitutional* rights. Rosenberg's claims with respect to the publicity preceding his arrest, the televised recording, and the publication of photographs can be read as invoking two constitutionally protected rights—the recently evolved and not yet clearly defined right to privacy, see Griswold v. Connecticut, 381 U.S. 479, 485, 85 S.Ct. 1678, 14 L. Ed.2d 510 (1965), and the Sixth and Fourteenth Amendment right to a fair trial before an impartial jury, see Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966).[4]

█ Little need be said with respect to the first. "Exposure of the self to others in varying degrees is a concomitant of life in a civilized community. The risk of this exposure is an essential incident of life in a society which places a primary value of freedom of speech and of press." Time, Inc. v. Hill, 385 U.S. 374, 388, 87 S.Ct. 534, 542, 17 L.Ed.2d 456 (1967). It is indisputable that the interest in privacy of a fugitive suspected of serious crime must yield to the public interest in his apprehension and the consequent publication of whatever may reasonably be deemed helpful to that end. However, so far as concerns the constitutional right of privacy, as distinguished from the right to a fair trial, the standard of permissible invasion is not to be so narrowly drawn. The *constitutional* right to privacy is not to be equated with the statutory right accorded by New York, Civil Rights Law §§ 50–51, McKinney's Consol.Laws, c. 6, and other states. Thus far only the most intimate phases of

---

4. Rosenberg's complaint contained allegations that statements made by Martin were "lies", "maliciously false", and "slander"; and the district judge charged the jury that the plaintiff's constitutional right "to be free of gratuitous prejudicial publicity" was an aspect, not only of his right to a fair trial, but "of his rights not to be defamed or misrepresented while under the custody of the law by those who were in charge with his custody." To the extent that the complaint might be viewed as stating a cause of action for defamation, such a claim does not implicate any federally-protected rights and is not cognizable under 42 U.S.C. § 1983. Association for Preservation of Freedom of Choice, Inc. v. Simon, 299 F.2d 212, 214 (2 Cir. 1962); Heller v. Roberts, 386 F.2d 832 (2 Cir. 1967). See also Church v. Hamilton, 444 F.2d 105 (3 Cir. 1971); Morey v. Independent School District #492, 312 F.Supp. 1257 (D.Minn.1969), aff'd, 429 F.2d 428 (8 Cir. 1970).

personal life have been held to be thus constitutionally protected. See, in addition to Griswold v. Connecticut, *supra*, Eisenstadt v. Baird, 405 U.S. 438, 453–454, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); and Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). This is not to say that no conduct of police officers toward a suspected criminal, even a murderer, may ever constitute a violation of a constitutional right to privacy. If Martin had caused the publication of a photograph of Rosenberg in the nude, compare York v. Story, 324 F. 2d 450 (9 Cir. 1963), cert. denied, 376 U.S. 939, 84 S.Ct. 794, 11 L.Ed.2d 659 (1964) (forcing female complainant to be photographed in indecent postures and circulating the pictures among the police), we would have a quite different case. But the very court that decided York v. Story has declined to extend it to action of the police in causing publication of charges of criminal conduct, even when the police had concluded that the plaintiff had not in fact committed a crime. Baker v. Howard, 419 F.2d 376 (9 Cir. 1969). See also Mattheis v. Hoyt, 136 F.Supp. 119, 124 (W.D.Mich. 1955). Similarly, the facts presented here fail to state a cause of action under section 1983 for violation of Rosenberg's constitutionally protected right of privacy. *Cf.* Felber v. Foote, 321 F.Supp. 85, 88–89 (D.Conn.1970) (three-judge court); Travers v. Paton, 261 F.Supp. 110 (D.Conn.1966).

 It would likewise seem plain that in order to recover damages for the deprivation of the right to a fair trial, a plaintiff must show not merely that the police engaged in conduct which "exceeded the limits of proper police procedure" and "might have affected his right to a fair trial," as the judge instructed, but that the improper conduct in fact had that result. Here Rosenberg meets the obstacle that this very issue was raised before the New York Court of Appeals on his appeal from his conviction and, as appears from its remittitur, was decided against him. Under modern notions with respect to issue preclusion, it is of no moment that the adverse party in the criminal case was the State rather than the police officer who is the defendant here. Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); Zdanok v. Glidden Co., 327 F.2d 944, 954–956 (2 Cir.), cert. denied, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964); Bernhard v. Bank of America, 19 Cal.2d 807, 811–813, 122 P.2d 892, 894–895 (1942) (Traynor, J.); B. R. DeWitt, Inc. v. Hall, 19 N.Y.2d 141, 278 N.Y.S.2d 596, 225 N.E.2d 195 (1967); Ritchie v. Landau, 475 F.2d 151, 155 (2 Cir. 1973). It might be contended against giving the New York judgment preclusive effect that while a state judgment between the same parties on the same claim will operate as *res judicata* in a federal civil rights action, as we held in Lackawanna Police Benevolent Ass'n v. Balen, 446 F.2d 52 (2 Cir. 1971),[5] a state criminal judgment should have no more effect by way of issue preclusion in a federal civil rights action than it would in federal *habeas*, as Mr. Justice Douglas argued, although unsuccessfully, with respect even to a federal criminal judgment in dissenting from the denial of certiorari in Lauchli v. United States, 405 U.S. 965, 92 S.Ct. 1182, 31 L.Ed.2d 241 (1972). But in this case Martin can successfully respond with the decision in Rosenberg's federal *habeas* proceeding that as a result of the lapse of time between the improper publicity in May 1962 and the trial in January 1963, and the effective *voir dire* of the jury panel,[6] he received a

---

5. For other cases see Friendly, Federal Jurisdiction: A General View 101–02 n. 113 (1973).

6. As stated in this court's opinion, 445 F.2d at 617:

At the voir dire of the jury, each prospective juror and alternate was questioned separately outside of the presence of the other veniremen. Each side was granted a total of thirty peremptory challenges. The twelve jurors and three alternates were finally selected after 109 prospects had been questioned. From the record of the voir dire it ap-

fair trial. It has thus been conclusively determined, not only by a state but by a federal court, that even though the pre-arrest publicity went considerably beyond what was necessary and Martin's alleged statement before the television cameras was thoroughly reprehensible, this did not in fact deprive Rosenberg of his constitutionally guaranteed right to a fair trial. We see no reason for according him a third opportunity to litigate in this action an issue that the highest court of New York and this court have both decided against him.

We turn therefore to the claim of damages for assault which Rosenberg sought to add on December 1, 1969. We assume that brutal police conduct violates a right guaranteed by the due process clause of the Fourteenth Amendment. See Collum v. Butler, 421 F.2d 1257 (7 Cir. 1970); Jenkins v. Averett, 424 F.2d 1228 (4 Cir. 1970). But we hold that the court erred in striking the defense of the statute of limitations with respect to this claim.[7]

The first point requiring determination is whether the assault claim "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading," so that the amendment would relate back under

F.R.Civ.P. 15(c). If it did, the plaintiff could readily surmount the limitation barrier, since we have held, Swan v. Board of Higher Education, *supra*, 319 F.2d at 59, that the applicable period for civil rights claims was the six years allowed under former N.Y. Civil Practice Act § 48(2) for actions "to recover upon a liability created by statute," and here the assault occurred on May 24, 1962, and the complaint was filed on April 15, 1968.[8]

■ If the test were merely temporal, the assault claim would fall within Rule 15(c), since the alleged assault came within a short time after the exhibition before the television cameras. However, the test is not contemporaneity but rather adequacy of notice. As said by Judge Laramore in Snoqualmie Tribe v. United States, 372 F.2d 951, 960, 178 Ct.Cl. 570 (1967), "the inquiry in a determination of whether a claim should relate back will focus on the notice given by the general fact situation set forth in the original pleading." Under that test the case for relation back conspicuously fails. On the most liberal reading not a word in the complaint even suggested a claim of physical assault. This case is rather strikingly similar to Griggs v.

---

pears that there was only one juror who remembered any of the details of the crime. This juror, Mr. Westbrook, stated that he remembered that Rosenberg was alleged to have a prior criminal record, but, upon questioning, he insisted that he could decide the case solely on the basis of evidence adduced at trial. After the court rejected a challenge for cause, the defense failed to exercise what would have been its first peremptory challenge. The remaining jurors only vaguely remembered the case, and indeed no more than what was already apparent from the voir dire.

7. It could be argued that, under F.R.Civ.P. 15(a), Martin should have repleaded the statute of limitations as a defense to the amended pleading. However, as pointed

out above, the judge made no formal order allowing the amendment. It seems plain from the record that the court and the parties considered that the amendment had been made and that plaintiff's motion to strike the defense of limitations was addressed to this as applied to both claims. Indeed, plaintiff's principal contention in support of his motion, that because of his "civil death" the statute of limitations was tolled, was quite unnecessary to the claim of prejudicial publicity.

8. The period for actions "to recover upon a liability created by statute" was shortened to three years, effective September 1, 1963, by CPLR § 214(2), but CPLR § 218(b) provides that any cause of action not barred on that date would have the benefit of the six years previously allowed.

Farmer, 314 F.Supp. 1185 (E.D.Va. 1969), aff'd, 430 F.2d 638 (4 Cir. 1970), where the court refused to permit a "relating back" amendment of a complaint alleging breach of promise to marry to include a claim for assault at the time of the breach.

■ Since the assault claim must be deemed not to have been asserted until December 1, 1969, it was time-barred unless the six year statute of limitations had been tolled. New York's tolling provision in behalf of certain prisoners affords Rosenberg no aid. Both former Civil Practice Act § 43 and present CPLR § 208 are limited to persons who are imprisoned "on a criminal charge or conviction for a term less than for life"; Rosenberg's original sentence was death, later commuted to life imprisonment. Ortiz v. LaVallee, 442 F.2d 912 (2 Cir. 1971), on which Rosenberg relies, does not assist him. We there rejected a contention by the State that, despite the literal applicability of the tolling provision to Ortiz, who was serving sentences for fixed terms, there should be no tolling since the provision was intended to alleviate the effect of the "civil death" statute, now N.Y. Civil Rights Law § 79, and the latter had been held inapplicable to federal actions under 42 U.S.C. § 1983, Beyer v. Werner, 299 F.Supp. 967, 969–970 (E.D.N.Y.1969), and cases there cited. Although the court, relying on a 1958 Report of the New York Advisory Committee on Practice and Procedure which referred to the practical difficulties in the way of a prisoner's suit, concluded that the tolling provision "was intended to apply even where a prisoner has the legal capacity to sue," it does not follow that the existence of such difficulties permits a federal court to create a tolling provision more liberal than the state legislature has seen fit to enact.

The judgment is reversed, with instructions to dismiss the complaint.