In re **OLYMPIA BREWING COMPANY SECURITIES LITIGATION.**

**No. 77 C 1206.**

United States District Court, N.D. Illinois, E.D.

June 10, 1985.

Hartunian Futterman & Howard, Chartered, Chicago, Ill., for plaintiff.

Howard R. Koven, Steven L. Bashwiner, H. Nicholas Berberian, Howard D. Lieberman, Julie P. Shelton, Therese M. Obringer, Mark T. Carberry, Friedman & Koven, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

This federal racketeering and securities fraud case is before the court on defendants' motion to dismiss as untimely the complaint filed by plaintiff John Marks. In the court's opinion of January 23, 1985, the court ordered further briefing of whether an amendment adding a claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 ("RICO"), could "relate back" under Fed.R. Civ.P. 15(c) to the filing of the complaint containing the allegations which form the RICO predicate acts. This opinion will address only the relation back issue.

The court invited briefing of this issue by the other parties in this consolidated action, since the court's opinion allowing RICO amendments by several parties left open whether relation back would be appropriate. *In re: Olympia Brewing Company Securities Litigation,* No. 77 C 1206, slip op. at 24–25 (N.D.Ill. Dec. 18, 1984). At the time of the December 1984 opinion, the RICO amendments were not sufficiently detailed to allow the court to rule on Rule 15(c) relation back. Pursuant to court order, however, the Plaintiffs' Committee filed on January 30, 1985 a "Bill of Particulars" setting forth the plaintiffs' method of proving their RICO claims. Hence, the court is better equipped to evaluate whether the RICO amendments relate back to the filing of the complaints containing claims now alleged to be part of the RICO racketeering activity. This opinion addresses general principles applicable to all of the consolidated cases concerning the availability of Rule 15(c) effectually to toll the limitations periods for plaintiffs' RICO claims.

### "Relation Back" Under Rule 15(c)

■ The parties agree that the RICO amendments add factual allegations to the original pleadings. Thus, the precise issue before the court is whether proposed amendments that add *factual* allegations, as well as a new legal theory, may be deemed as having been filed at the time of the original complaint. Rule 15(c) provides, in relevant part:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleadings, the amendment relates back to the date of the original pleading.

Commentators and courts agree that Rule 15(c) was largely designed to notify a party that claims will be asserted that arise out of the " 'general fact situation set forth in the original pleading.' " *Rosenberg v. Martin,* 478 F.2d 520, 526 (2d Cir.) (Friendly, J.), *cert. denied,* 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed.2d 90 (1973) (quoting from *Snoqualmie Tribe v. United States,* 372 F.2d 951, 960 (Ct.Cl.1967)). *See* 3 J. Moore, *Moore's Federal Practice* ¶ 15.15[2], at 15–190 to 191 (1985 & Supp.1985); *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 104 S.Ct. 1723, 1725 n. 3, 80 L.Ed.2d 196 (1984). It goes without saying

that relation back is appropriate where a party seeks to add a new legal theory to a set of previously alleged facts (assuming amendment is otherwise allowed under Rule 15(a)).

■ It is equally clear that "an amendment which states [an] entirely new claim for relief based on different facts will not relate back...." 3 J. Moore, *supra*, at 15–196 (footnote omitted). Hence, in *Rosenberg*, relation back was not allowed where a plaintiff alleging slander sought to amend his complaint to add a claim for assault. 478 F.2d at 526. The Court noted that no mention of assault was made in the original complaint. Even though the assault was close in time to the slander, therefore, fair notice of a claim of assault was not provided by the original pleadings. Similarly, in *Holdridge v. Heyer-Schulte Corp. of Santa Barbara*, 440 F.Supp. 1088 (N.D.N.Y.1977), the court did not allow relation back of a claim for malpractice in May 1972 to the original complaint of malpractice in July 1971. In arriving at that conclusion, the court cited several cases where relation back was not allowed, all of which concern amendments adding factual allegations distinct in time and in transaction from those of the original complaint. *Id.* at 1094. *See also Marine Midland Bank v. Keplinger & Associates, Inc.*, 94 F.R.D. 101, 104 (S.D.N.Y.1982) (no relation back where plaintiffs' claim of reliance on August 1977 statements expanded to include reliance on continuing statements through March 1979 and a continuing failure to correct the 1979 misstatements); *Textile Museum v. F. Eberstadt & Co., Inc.*, 453 F.Supp. 72, 75 (S.D.N.Y.1978) (claim that investment service should have recommended sale in 1974 does not relate back to complaint alleging service should not have recommended purchase in 1969); *Artman v. International Harvester Co.*, 355 F.Supp. 476 (W.D.Pa.1972) (no relation back of antitrust violations adding completely new factual allegations to original complaint of breach of contract and unfair dealing between two parties).

All of these cases involve amendments that are distinct from the original pleadings. In some, the original and the amended sets of facts were separated by a significant time lapse, such as the one year lapse in *Holdridge*. In others, the two sets of facts were different in character, such as the claims in *Rosenberg* of slander and assault. In still others, the two sets of facts led to arguably different injuries, as in *Rosenberg*, *Textile*, and *Marine Midland*. Relation back was clearly inappropriate in these cases under Rule 15(c).

Between these two clear principles is a grey area where courts have allowed relation back when amendments have added factual allegations that can be characterized as falling with the general "transaction" alleged in the original complaint. These cases rely for their holdings, sometimes only implicitly, on the philosophy of the Federal Rules to reject rigid categories of causes of actions in favor of a transactional or claim analysis. 3 J. Moore, *supra*, at 15–184, 185, 194. Whether these courts refer to "the events leading up to the injury," *Tiller v. Atlantic Coast Line R. Co.*, 323 U.S. 574, 581, 65 S.Ct. 421, 424, 89 L.Ed. 465 (1945); "the same occurrence," *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir.1973); or "the whole transaction," *Goodman v. Poland*, 395 F.Supp. 660, 684 (D.Md.1975), they in effect allow additional factual allegations to relate back under Rule 15(c). These case, however, concern factual additions that are much more closely related in time and in transaction to the original allegations than the amendments discussed in the immediately preceding paragraph.

An example of this close relationship between the originally alleged transaction and the factual amendments can be found in *Tiller*. There, plaintiff alleged that her husband's death was caused by the defendants' failure to provide a proper lookout for him, to warn him of the approaching train, to keep the head car properly lighted, and to warn him of a sudden change in the method of shifting cars. The Court explained:

The amended complaint charged the failure to have the locomotive properly lighted. Both of them related to the same general conduct, transaction and occurrence which involved the death of the deceased.... The cause of action now, as it was in the beginning, is the same—it is a suit to recover damages for the alleged wrongful death of the deceased.... There is no reason to apply a statute of limitations when, as here, the respondent has had notice from the beginning that petitioner was trying to enforce a claim against it because of the events leading up to the death....

323 U.S. at 581, 65 S.Ct. at 424. Hence, while a new fact was added to the original pleadings, the underlying claim was basically the same.

Likewise, in *Graboi v. Kibel*, 432 F.Supp. 572, 575 (S.D.N.Y.1977), the plaintiff, who had been raped in defendant's apartment building by a building employee, originally alleged breach of contract and vicarious liability for the defendant's employee's tort. The attempted amendments added theories of negligent design, maintenance, and construction of the building, as well as negligent hiring of the employee. The court found no relation back of the former factual allegations. Regarding negligent hiring, however, the court found the claim close enough to the original claim of assault that relation back was appropriate, even though the negligent hiring claim clearly contained additional factual allegations. These allegations, however, were close in time and subject matter to the general fact situation originally alleged. *See Goodman*, 395 F.Supp. at 684–686 (common law fraud relates back to claim of securities fraud, although at time intent was not an element of securities fraud claim); *Zagurski v. American Tobacco Co.*, 44 F.R.D. 440, 441–443 (D.Conn.1968) (claim of failure to warn public of inherently dangerous product relates back to claim of breach of warranty of fitness of personal use); *Hageman*, 486 F.2d at 484 (claim that violation of state and federal statutes and negligent provision of gas to defective heater related back to claim of failure adequately to odorize gas and to warn of proper safety precautions to be used with gas).

These holdings, in which additional factual allegations relate back to closely-related original allegations, are consistent with the view that Rule 15(c) evidences a rejection of "mechanical rules ... such as whether evidence on the new claim could have been offered under the original pleadings...." 3 J. Moore, *supra*, at 15–207. While such an inquiry is relevant, sufficient notice of the new claim is arguably present where "the original claim and the amendment involve at least substantially overlapping occurrences." *De Malherbe v. International Union of Elevator Constructors*, 449 F.Supp. 1335, 1353 (N.D.Ca.1978). *See Rosenberg*, 478 F.2d at 526 (amended allegations should be tested against "general fact situation" alleged in original complaint).

▪ The court therefore finds that a claim adding new factual allegations may relate back to the original pleadings where a sufficiently close relationship exists between the original and the new claims. In such a case, the allegations all relate to the same transaction out of which the litigation arose, and Rule 15(c)'s notice requirements are met. In this regard, the temporal proximity of the facts is relevant, although not dispositive. *See Rosenberg*, 478 F.2d at 526. Also relevant are the general character of the sets of factual allegations and whether the facts are all part of the events leading to the originally alleged injury. Under this test, relation back in these cases is appropriate.

### "Relation Back" in Present Case

▪ In this consolidated case, the plaintiffs who filed individual actions complained of defendants' alleged violations of, among other things, federal securities laws. Most of the plaintiffs had not filed claims under RICO, and these plaintiffs recently sought and obtained leave to add such claims. *See In Re: Olympia Brewing Company Securities Litagation*, No.

77 C 1206 (N.D.Ill. Dec. 18, 1984). In that opinion, as discussed above, the court considered only whether amendment should be allowed under Rule 15(a), and reserved ruling on whether plaintiffs would benefit from the relation back provisions of Rule 15(c). Hence, the court has already determined that defendants would not be prejudiced from plaintiffs' RICO amendments, as allowed and limited in the court's opinion.[1]

Whether these amendments will relate back to the original complaints requires an analysis of the connection between the original and the amended pleadings. Plaintiffs have all pled violations of § 1962(a), which provides in relevant part:

> It shall be unlawful for any person who has received any income derived, directly or indirectly from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Plaintiffs generally allege that the "pattern of racketeering activity," 18 U.S.C. § 1961(1), (5), comprises two or more acts of the very securities or other frauds alleged in plaintiffs' original complaints. The "enterprises," 18 U.S.C. § 1961(4), have been limited by the court to the three major defendants in these cases, whose connection with interstate commerce was implicated in the securities fraud allegations.

Defendants protest most strongly the addition of factual allegations concerning the derivation of income from the pattern of racketeering activity and the use of that income in the operation of a RICO enterprise. It is true that allegations regarding these facts are simply not present in the original complaints, as proof thereof is not relevant to the original claims. Unaware of the plaintiffs' proposed method of proving these new elements, the court noted in the December 18, 1984 opinion that the elements may not relate back to the original pleadings. Plaintiffs' January 30, 1985 proffer submitted for the court's use in resolving the relation back issue, establishes that the evidence of use and investment is intimately tied up with the originally alleged predicate acts of fraud.

According to plaintiffs, defendants derived the § 1962(a) "income" from trading income and margin interest. The former category includes commissions and markups on the sale of securities, appreciation in defendants' own securities, and the purchase price of the shares sold to plaintiffs. The latter includes interest charged to customers on their margin debt resulting from the subject stock purchases. Defendants received this income from the very sales underlying the previously alleged acts of securities fraud. To prove this receipt of income, plaintiffs list the relevant documents, prepared by defendants, showing sales, commissions, and margin interest. Defendants' own agents are listed as witnesses who will testify how defendants realized profits from this income. Plaintiffs indicate that this income was used to pay administrative expenses, compensate partners and employees, purchase stock, and issue dividends.

The receipt and use activities described in the proffer persuade the court that this conduct relates back to the securities fraud and other predicate act allegations. As

---

1. Defendants continue to argue that the amendments prejudice them because allowed after discovery was closed. However, the court explained in detail that the presence of RICO allegations on file well before the discovery cutoff date served sufficient notice to defendants that they should conduct discovery on how the RICO plaintiffs would prove these claims. All of these plaintiffs complained of market fraud, moreover, implicating all or at least most of the securities transactions involved in the consolidated cases. Hence, the defendants were on notice that discovery of all these transactions, and not just those of the original RICO plaintiffs, was necessary.

described above, the RICO income was derived from the fraudulent transactions underlying the original complaints. Hence, the prohibited derivation of income is both close in time and subject matter to the previously alleged transactions. Moreover, the RICO and predicate act injuries are the same, and thus the set of facts underlying each claim leads up to the same injury. The same is true for the use allegations, since the RICO income simply became part of defendants' ordinary operating expenses. The additional facts pertinent to the new RICO allegations, then, are so closely linked to the original frauds that they are part of the general fact situation originally alleged. *See Gilbert v. Bagley,* Securities L.Rptr. (CCH) ¶ 99,483, at 96.795 (M.D.N.C.1982) (§ 1962(c) allegations relate back to original allegations underlying predicate acts). This conclusion, of course, is based on the RICO proof as outlined in the plaintiffs' proffer. The court finds, therefore, that the proffer defines the limits of plaintiffs' evidence on the additional facts necessary to the RICO allegations for purposes of relation back of those allegations.

### Conclusion

The additional factual allegations contained in the parties' RICO amendments, as set forth in the Plaintiffs' Committee's proffer, do "relate back" under Fed.R. Civ.P. 15(c) to the filing of complaints containing claims that constitute the RICO predicate acts.

It is so ordered.