MARC WILSON *et al.*, Plaintiffs-Appellants, v. ROBERT S. SCHAEFER *et al.*, Defendants-Appellees.

Fourth District    No. 4—09—0034

Opinion filed September 9, 2009.

KNECHT, J., dissenting.

James Wylder, of Wylder Corwin Kelly LLP, of Bloomington, for appellants.

James C. Kearns and Tamara K. Hackmann, both of Heyl, Royster, Voelker & Allen, of Urbana, for appellee Robert S. Schaefer.

Renee L. Monfort and Elizabeth B. Megli, both of Dobbins, Fraker, Tennant, Joy & Perlstein, P.C., of Champaign, for appellee Christie Clinic, P.C.

JUSTICE POPE delivered the opinion of the court:

In May 2008, plaintiffs Marc and Sandy Wilson filed a six-count complaint against defendants Robert S. Schaefer, an orthopedic surgeon, and Christie Clinic, P.C. (Christie Clinic), seeking damages. Plaintiffs based (1) counts I and II of their complaint on Schaefer's alleged failure to provide adequate information to Marc so that he could make an informed decision whether to have the surgery; (2) counts III and IV on Schaefer's alleged negligent failure (a) to determine the etiology of the sciatic nerve palsy that Marc developed after the surgery and (b) to attempt to resolve the condition; and (3) counts V and VI on a *res ipsa loquitor* theory of relief. In September 2008, the trial court dismissed counts III through VI of plaintiffs' complaint as untimely. Plaintiffs appeal, arguing the court erred in dismissing these four counts as untimely because they relate back to a two-count complaint plaintiffs timely filed in August 2006. We affirm.

## I. BACKGROUND

In August 2004, Schaefer, who was a member of Christie Clinic, performed a right total hip arthroplasty on Marc. After the surgery, Marc developed sciatic nerve palsy and a right "foot drop," which made it impossible for Marc to walk on his own absent the aid of appliances.

In August 2006, within the applicable statute of limitations, plaintiffs filed a two-count complaint against defendants Schaefer and Christie Clinic, alleging Schaefer did not receive Marc's informed consent before performing the right total hip arthroplasty because Schaefer did not disclose to Marc "the risks, results, or medical alternatives which existed related to the procedure." Attached to this initial complaint was a letter from Elliott H. Leitman, M.D., which stated:

> "As you are aware, I recently reviewed records pertaining to Mark [*sic*] Wilson and the right total hip arthroplasty surgery performed on Mr. Wilson on August 18, 2004. As you are aware, this surgery was performed by Robert Schaefer, M.D. Following the surgery, Mr. Wilson was diagnosed with right sciatic nerve palsy. As a result, he was left with significant disability.
>
> As we discussed, the exact cause of Mr. Wilson's sciatic nerve palsy is unknown. In addition, it is possible for this type of injury

to occur in the absence of negligence. As part of an informed consent, it is the obligation of the surgeon to discuss with one's patient, the most likely complications that may result. In particular, the possibility of neurovascular injury and/or infection must be among the topics discussed with the patient. With regard to this matter, a failure of Mr. Wilson to be informed of the possibility of a neurologic injury will constitute a breach of standard orthopedic care."

Plaintiffs voluntarily dismissed this claim in June 2007. In May 2008, plaintiffs filed a six-count complaint against Schaefer and Christie Clinic, once again making an informed-consent claim against these defendants. However, the complaint also included two counts alleging Schaefer was negligent in failing to determine the etiology of the sciatic nerve palsy Marc developed after the surgery and in attempting to resolve the condition. In addition, the complaint also included two counts based on a *res ipsa loquitor* theory of liability, alleging that total sciatic permanent palsy as a result of a total right hip arthoplasty does not occur in the absence of negligence. The new complaint did not rely on Dr. Leitman's letter of merit; rather, it contained an entirely new letter of merit from Dr. Richard Goodman.

In July 2008, Christie Clinic and Schaefer filed motions to dismiss plaintiffs' complaint with prejudice pursuant to section 2—619 of the Code of Civil Procedure (Code) (735 ILCS 5/2—619 (West 2006)). In September 2008, the trial court dismissed all counts of the complaint. The court granted plaintiffs leave to amend the first two counts of the complaint but dismissed the other four counts with prejudice because those four counts were time barred and did not relate back to plaintiffs' complaint filed in August 2006.

The trial court entered a Rule 304(a) finding with regard to its order dismissing with prejudice counts III through VI of plaintiffs' May 2008 complaint.

This appeal followed.

## II. ANALYSIS

Plaintiffs concede counts III through VI of their complaint are time barred unless they relate back to their original August 2006 complaint. Section 2—616(b) of the Code states:

"The cause of action, cross[-]claim or defense set up in any amended pleading shall not be barred by lapse of time under any statute or contract prescribing or limiting the time within which an action may be brought or right asserted, if the time prescribed or limited had not expired when the original pleading was filed, and if it shall appear from the original and amended pleadings that the cause of action asserted, or the defense or cross[-]claim

interposed in the amended pleading[,] grew out of the same transaction or occurrence set up in the original pleading, even though the original pleading was defective in that it failed to allege the performance of some act or the existence of some fact or some other matter which is a necessary condition precedent to the right of recovery or defense asserted, if the condition precedent has in fact been performed, and for the purpose of preserving the cause of action, cross[-]claim or defense set up in the amended pleading, and for that purpose only, an amendment to any pleading shall be held to relate back to the date of the filing of the original pleading so amended." 735 ILCS 5/2—616(b) (West 2006).

In determining whether counts III through VI of plaintiffs' May 2008 complaint relate back to their August 2006 complaint, the key inquiry under section 2—616(b) "is whether the cause of action asserted in the newly filed pleading 'grew out of the same transaction or occurrence' set up in the pleadings that were filed within the limitations period" (*Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 346, 882 N.E.2d 583, 585 (2008), quoting 735 ILCS 5/2—616(b) (West 2006)).

Plaintiffs argue this court should reverse the trial court's order dismissing counts III through VI based on *Porter*. However, a close reading of *Porter* reveals a significant distinction between that case and the case *sub judice*.

In *Porter*, the plaintiff was involved in an accident and brought to the emergency room at approximately 8 a.m., suffering from a spinal cord injury. *Porter*, 227 Ill. 2d at 346, 882 N.E.2d at 585. Various procedures and tests were performed on the plaintiff to monitor his neurological function from the time he arrived at the hospital until he was operated on the next day at 10 p.m. *Porter*, 227 Ill. 2d at 346, 882 N.E.2d at 585. In the plaintiff's original complaint filed on March 25, 2002, the plaintiff named Dr. Oliver Dold as a defendant and the hospital as a respondent in discovery. *Porter*, 227 Ill. 2d at 346, 882 N.E.2d at 585.

After taking the deposition of the doctor who performed the surgery, the plaintiff filed his first amended complaint in January 2003, which repeated the allegations against Dr. Dold but now named the hospital as a defendant instead of a respondent in discovery. *Porter*, 227 Ill. 2d at 348, 882 N.E.2d at 586.

"The first amended complaint alleged that, as a result of the wrongful acts and omissions of the [h]ospital, [the] plaintiff's diminishing neurological function went undiagnosed and untreated, causing him to lose extremity function. Specifically, plaintiff alleged that around noon on January 12, 2001, Dr. Dold ordered neurological checks for plaintiff every hour and that those checks were to be performed by [h]ospital personnel. Plaintiff further alleged that the

[h]ospital, through its employees and agents, breached its duty of care by failing to (1) perform thorough neurological checks every hour as ordered by Dr. Dold, (2) record complete spinal assessments as part of hourly neurological checks, (3) record extremity strength as part of hourly neurological checks on January 13, 2001, from 1 a.m. to 6 a.m., and (4) report diminishing neurological status to the attending neurosurgeon." *Porter*, 227 Ill. 2d at 348, 882 N.E.2d at 586.

In June 2004, the plaintiff asked for leave to file a second amended complaint. *Porter*, 227 Ill. 2d at 348, 882 N.E.2d at 586. The plaintiff sought to add a third count directed at the hospital. *Porter*, 227 Ill. 2d at 348, 882 N.E.2d at 586.

"The third count alleged that [the] plaintiff underwent a CT scan of the cervical spine on January 12, 2001, which was read and interpreted by Dr. Gordon Cross, a radiologist. [The] [p]laintiff asserted that Dr. Cross was an apparent agent of the [h]ospital. [The] [p]laintiff further alleged that the [h]ospital, through its agents and employees, breached its duty of care by one or more of the following acts or omissions: (1) failed to properly interpret the CT scan of [the] plaintiff's cervical spine; (2) failed to appreciate cervical fractures revealed on that CT scan of the cervical spine; and (3) misread and misinterpreted the CT scan of the cervical spine. Finally, [the] plaintiff alleged that[,] as a result of these wrongful acts and omissions, his diminishing neurological function went undiagnosed and untreated, causing plaintiff to lose extremity function." *Porter*, 227 Ill. 2d at 348-49, 882 N.E.2d at 586.

The hospital objected to the motion for leave to amend, arguing the new count against it based on Dr. Cross's alleged negligence was barred by the statute of limitations set forth in section 13—212 of the Code (735 ILCS 5/13—212 (West 2004)) because it was a new and different claim. *Porter*, 227 Ill. 2d at 349, 882 N.E.2d at 587. The plaintiff argued the new count against the hospital was timely pursuant to section 2—616(b) of the Code (735 ILCS 5/2—616(b) (West 2004)) because it was based on Dr. Cross's alleged negligence, which arose out of the same treatment as alleged in the original and first amended complaints. *Porter*, 227 Ill. 2d at 349-50, 882 N.E.2d at 587.

After the trial court allowed the motion to amend and the plaintiff filed the second amended complaint, the hospital filed a motion to dismiss count III, arguing it was untimely because it did not relate back. *Porter*, 227 Ill. 2d at 350, 882 N.E.2d at 587. The court dismissed count III, noting "its previous identification of the 'same transaction or occurrence' as the entire hospitalization of the patient was too broad for purposes of the relation-back doctrine." *Porter*, 227 Ill. 2d at 350, 882 N.E.2d at 587.

Our supreme court held the trial court erred in finding count III did not relate back to the timely filed complaint. The court noted "[t]he purpose of the relation-back doctrine of section 2—616(b) is to preserve causes of action against loss by reason of technical default unrelated to the merits." *Porter*, 227 Ill. 2d at 355, 882 N.E.2d at 589-90. Therefore, courts should "liberally construe the requirements of section 2—616(b)." *Porter*, 227 Ill. 2d at 355, 882 N.E.2d at 590. However, the court also noted:

> "[B]oth the statute of limitations and section 2—616(b) are designed to afford a defendant a fair opportunity to investigate *the circumstances upon which liability is based* while the facts are accessible. [Citation.] Thus, it has been stated that the rationale behind the 'same transaction or occurrence' rule is that a defendant is not prejudiced if ' *"his attention was directed, within the time prescribed or limited, to the facts that form the basis of the claim asserted against him."* ' [Citations.] A court should consider the entire record, including depositions and exhibits, to determine whether the defendant had such *notice*." (Emphases added.) *Porter*, 227 Ill. 2d at 355, 882 N.E.2d at 590.

The supreme court adopted the "sufficiently-close-relationship test" as set forth in *In re Olympia Brewing Co. Securities Litigation*, 612 F. Supp. 1370 (N.D. Ill. 1985), to determine whether the new allegations contained in count III of the second amended complaint were timely. *Porter*, 227 Ill. 2d at 360, 882 N.E.2d at 593. The court stated:

> "Under that test, a new claim will be considered to have arisen out of the same transaction or occurrence and will relate back if the new allegations as compared with the timely filed allegations show that the events alleged were close in time and subject matter and led to the same injury." *Porter*, 227 Ill. 2d at 360, 882 N.E.2d at 593.

However, *Olympia Brewing Co.* also gives guidance on what does not relate back. Our supreme court stated:

> "The court in *Olympia Brewing Co.* noted that an amendment is considered distinct from the original pleading and will not relate back where (1) the original and amended set of facts are separated by a significant lapse of time, or (2) the two sets of facts are different in character, as for example when one alleges a slander and the other alleges a physical assault, or (3) the two sets of facts lead to arguably different injuries." *Porter*, 227 Ill. 2d at 359, 882 N.E.2d at 592, citing *Olympia Brewing Co.*, 612 F. Supp. at 1372.

Applying the *Olympia Brewing Co.* test, the supreme court found count III of the second amended complaint related back to the timely first amended complaint. *Porter*, 227 Ill. 2d at 361, 882 N.E.2d at 593. The court noted:

"[The] [p]laintiff's timely filed first amended complaint alleged that the [h]ospital provided personnel, including nurses, aides, attendants *and others* for the care and treatment of patients, including [the] plaintiff. One of the allegations of negligence in that complaint was that the [h]ospital, through its employees and agents, failed to report diminishing neurological status to the attending neurosurgeon. The complaint further alleged that[,] as a direct result of this wrongful act, [the] plaintiff's diminishing neurological function went undiagnosed and untreated, causing [the] plaintiff to lose extremity function. Count III of the second amended complaint added allegations that essentially alleged that an agent of the [h]ospital, Dr. Cross, misread and misinterpreted the CT scan of [the] plaintiff's spine and that, as a result, [the] plaintiff's diminishing neurological function went undiagnosed and untreated, causing [the] plaintiff to lose extremity function." (Emphasis in original.) *Porter*, 227 Ill. 2d at 361, 882 N.E.2d at 593.

The supreme court found "a sufficiently close relationship between the two allegations to show that the later allegation grew out of the same transaction or occurrence set up in the earlier one." *Porter*, 227 Ill. 2d at 361, 882 N.E.2d at 593. According to the court:

"The two allegations were part of the same events leading up to the same ultimate injury for which damages [were] sought. They were closely connected in both time and location. They were also similar in character and general subject matter, as they involved allegations of medical malpractice that resulted in failure to appreciate [the] plaintiff's diminishing neurological status. Furthermore, *the [h]ospital was on notice from the earlier allegation that plaintiff was asserting negligent treatment by the employees and agents of the [h]ospital in failing to appreciate and report diminishing neurological status. We believe that the [h]ospital should have been aware that this would include any procedures or test—including a CT scan—performed by agents or employees of the [h]ospital that might have impacted their ability to appreciate and report on plaintiff's diminishing neurological status in the critical hours of January 12, 2001, leading up to [the] plaintiff's surgery the next day.*" (Emphasis added.) *Porter*, 227 Ill. 2d at 361-62, 882 N.E.2d at 593.

According to the court:

"[W]e find that the allegation in plaintiff's second amended complaint about Dr. Cross'[s] reading of the CT scan was an *amplification* that grew out of the earlier allegation about failing to report diminishing neurological function, both of which arose out of the same transaction or occurrence. Thus, we find that the [h]ospital had *sufficient notice* of the new allegations and was not prejudiced thereby." (Emphases added.) *Porter*, 227 Ill. 2d at 363, 882 N.E.2d at 594.

In the case *sub judice*, defendants did not have sufficient notice of the new allegations found in counts III through VI of plaintiffs' May 2008 complaint. Unlike the allegation in the third count of the plaintiff's second amended complaint in *Porter*, the allegations found in counts III through VI of plaintiffs' amended complaint were not merely an amplification of allegations of which defendants were already aware. Instead, the allegations were entirely different. Where the timely filed complaint dealt with what Schaefer said or did not say prior to a surgical procedure, the new counts concerned how he actually performed the procedure and cared for Marc afterward. This is analogous to the supreme court's distinction in *Porter* between slander and a physical assault. See *Porter*, 227 Ill. 2d at 359, 882 N.E.2d at 592. In other words, the timely filed claims and the new claims are not based on the same circumstances.

Defendants in the instant case had no notice, based on the allegations in plaintiffs' timely filed complaint, that plaintiffs believed anything Schaefer did either during or after the surgery was negligent. In addition, defendants had no notice plaintiffs had any plans of bringing a negligence claim against Schaefer or the hospital for Schaefer's conduct during or after the surgery. Defendants were only on notice from plaintiffs' timely filed complaint that plaintiffs believed Schaefer did not adequately advise Marc of the risks of the surgery. As a result, defendants did not have "a fair opportunity to investigate the circumstances upon which liability [was] based" (*Porter*, 227 Ill. 2d at 355, 882 N.E.2d at 590) in the new claims.

Not only were defendants not given any notice of these new claims by plaintiffs' timely filed complaint, plaintiffs' timely filed complaint put defendants on notice that plaintiffs were not going to pursue a claim based on a *res ipsa loquitor* theory of relief. In his letter, Dr. Leitman stated *"it is possible for this injury to occur in the absence of negligence."* (Emphasis added.) This is completely contrary to counts V and VI of plaintiffs' May 2008 complaint, which are based on a *res ipsa loquitor* theory. Counts V and VI of plaintiffs' May 2008 complaint allege *"[t]otal sciatic permanent palsy, as a result of a total right hip arthroplasty[,] does not occur in the absence of negligence."* (Emphasis added.)

For the above stated reasons, we find counts III through VI of plaintiffs' May 2008 complaint do not relate back to their timely filed complaint. Our decision is supported by the United States Court of Appeals for the Eleventh Circuit's opinion in *Moore v. Baker*, 989 F.2d 1129 (11th Cir. 1993). While only persuasive authority to this court, our supreme court in *Porter* noted its interest in having a uniform body of precedent where many cases involving diversity of citizenship

could be brought in either state or federal court. *Porter*, 227 Ill. 2d at 358, 882 N.E.2d at 592.

In *Moore*, the plaintiff filed a complaint against her surgeon for an alleged lack of informed consent. *Moore*, 989 F.2d at 1131. Following the expiration of the statute of limitations, the plaintiff sought to amend her complaint to add claims of negligence in surgery and postoperative care. In affirming the district court's denial of the plaintiff's motion to amend, the Eleventh Circuit stated:

> "[T]he allegations asserted in Moore's original complaint contain nothing to put Dr. Baker on notice that the new claims of negligence might be asserted. Even when given a liberal construction, there is nothing in Moore's original complaint which makes reference to any acts of alleged negligence by Dr. Baker either during or after surgery. The original complaint focuses on Baker's actions before Moore decided to undergo surgery, but the amended complaint focuses on Baker's actions during and after the surgery. The alleged acts of negligence occurred at different times and involved separate and distinct conduct. In order to recover on the negligence claim contained in her amended complaint, Moore would have to prove completely different facts than would otherwise have been required to recover on the informed[-]consent claim in the original complaint.
>
> We must conclude that Moore's new claim does not arise out of the same conduct, transaction, or occurrence as the claims in the original complaint. Therefore, the amended complaint does not relate back to the original complaint, and the proposed new claims are barred by the applicable statute of limitations." *Moore*, 989 F.2d at 1132.

We find *Moore* on point.

Our supreme court's decision in *Porter*, which recognized an entirely new and distinct claim for relief based on completely different facts will not relate back ("a plaintiff cannot be allowed to slip in an entirely distinct claim in violation of the limitations act"), mandates dismissal of counts III through VI of the amended complaint as untimely. *Porter*, 227 Ill. 2d at 359, 882 N.E.2d at 592, citing *Simmons v. Hendricks*, 32 Ill. 2d 489, 497, 207 N.E.2d 440, 444 (1965). The actions involved in an informed-consent claim would be entirely different from the actions involved in the negligent performance of a surgery. Nothing in the original complaint gave defendants notice of any wrongful conduct in the performance of the surgery or care thereafter.

The original complaint filed August 11, 2006, did not contain a *single* allegation of negligence on the part of defendants with respect to the surgical procedure performed on Marc; nor did it contain any

allegation of negligence with respect to Marc's postsurgical care and treatment. The *only* allegation in the original complaint relates to alleged negligence on Dr. Schaefer's part in failing to fully advise Marc of the "risks, results, and medical alternatives available to him." In other words, the sole basis of liability asserted in the original complaint was lack of informed consent. Nothing in this complaint put anyone on notice that some wrongful (*i.e.*, negligent) act on the part of Schaefer led to Marc's injury.

## III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment dismissing counts III through VI of plaintiffs' complaint.

Affirmed.

APPLETON, J., concurs.

JUSTICE KNECHT, dissenting:

Simply put, we got it right the first time. The trial court was mistaken in dismissing the complaint. Plaintiffs added additional counts to a medical-malpractice complaint after the statute of limitations expired, and those additional counts relate back to a timely filed complaint.

In *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 355, 882 N.E.2d 583, 589-90 (2008), our supreme court noted, "[t]he purpose of the relation-back doctrine of section 2—616(b) is to preserve causes of action against loss by reason of technical default unrelated to the merits." We should "liberally construe the requirements of section 2—616(b)." *Porter*, 227 Ill. 2d at 355, 882 N.E.2d at 590.

What are the merits here? Marc Wilson had a hip arthroplasty. Now, Marc has sciatic nerve palsy and a condition known as "foot drop." Marc cannot walk without the aid of appliances. Marc and his wife think defendants were negligent in failing to disclose the "risks, results, and medical alternatives" related to hip arthroplasty. They also think, based on the complaint, that defendants negligently failed to investigate and treat the sciatic nerve palsy and were negligent based on *res ipsa loquitur*.

The precise question before the trial court, and before us, is whether the additional counts "grew out of the same transaction or occurrence" (735 ILCS 5/2—616(b) (West 2006)) as the counts in the original, timely filed complaint.

Defendants claim Marc and Sandy have now alleged three discrete transactions or occurrences—what happened before surgery, what

happened during surgery, and what happened after surgery. The problem with defendants' position is their interpretation of the phrase "grew out of the same transaction or occurrence" is too narrow.

Informed consent is an issue because of the impending surgery. Negligence during surgery is an issue because the surgery took place. The need for treatment and postsurgical investigation are issues because of the surgery. The key word is "surgery," and the key concepts are time and relation. These issues arise because of the surgery, and they are so closely related in time, subject matter, and character that they are stages or parts of one transaction or occurrence. The facts of this case more than satisfy the sufficiently-close-relationship test. *Porter*, 227 Ill. 2d at 360, 882 N.E.2d at 593.

Section 2—616(b) "was largely designed to notify a party that claims will be asserted that grow out of the general fact situation set forth in the original pleading." *Porter*, 227 Ill. 2d at 362, 882 N.E.2d at 594. Here, defendants were on notice the alleged negligent injury to Marc related to the hip surgery. Defendants' supposed belief negligence would never be alleged except concerning conduct *prior* to surgery is misplaced, unconvincing, and defies common sense. This must be the "grey area" referred to in *Porter*, 227 Ill. 2d at 359, 882 N.E.2d at 592. The facts in *Porter* are much different than the facts in this case, but the thrust of *Porter* calls for plaintiffs to have their claims resolved on the merits.