No. 72,314

ROBERT ISNARD and SHIRLEY ISNARD, d/b/a CHAIRWORLD, *Appellants*, v. CITY OF COFFEYVILLE, KANSAS, *Appellee*.

(917 P.2d 882)

Opinion filed May 31, 1996.

*Carlton W. Kennard*, of Spigarelli, McLane & Short, of Pittsburg, argued the cause and was on the briefs for appellants.

*E. Dudley Smith*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Overland Park, argued the cause, and *Patrick G. Reavey*, of the same firm, was with him on the briefs for appellee.

The opinion of the court was delivered by

SIX, J.: This is a flood damage statute of limitations case. Robert and Shirley Isnard sued the City of Coffeyville (City), alleging nuisance and negligent design. The City's underground storm sewer allegedly caused flood damages to the Isnards' furniture store and warehouse during heavy rains, beginning in June 1985. The Isnards asserted claims for both permanent and temporary damages (the value of their real property, inventory, lost income, and other miscellaneous expenses). The district court granted summary judgment to the City, ruling that the claims were barred by K.S.A. 60-513, a 2-year statute of limitations. In an unpublished opinion filed August 4, 1995, the Court of Appeals agreed that the permanent damage claim for diminution of property value was time barred, but reversed on the claim for temporary damages. We granted the

City's petition for review. Our jurisdiction is under K.S.A. 20-3018(b).

The issue is whether the Isnards' claim for temporary damages to personal property and cost of repair to buildings is barred by K.S.A. 60-513(a)(4)? The answer is, "Yes." We reverse the Court of Appeals. All of the Isnards' claims are time barred. The Isnards, in their brief filed in the Court of Appeals, observe: "If this court finds that the construction of the storm water drainage system creates a permanent injury to the plaintiffs, then the cause of actions sounding in tort must fail." We now turn to an analysis of why the tort claims fail.

## FACTS

The Isnards owned and operated Chairworld and United Warehouse, businesses located in the City. In 1981, the City began construction of a new storm sewer system. Phase One of the project included the installation of two adjacent underground concrete culverts, each measuring 3 feet tall and 5 feet wide, running for 200 feet. This part of Phase One, which took 2 to 3 months to complete, ran directly in front of Chairworld. Phase One, as a whole, took approximately 9 months to finish.

Phase Two involved the installation of additional drainage systems, running north of Phase One for approximately two blocks. Workers completed the entire project sometime in 1984. Robert Isnard knew that the new storm sewer system was a permanent and substantial structure that could not be easily moved.

On June 4, 1985, the City received over 7 inches of rain. As a result, both Chairworld and United Warehouse were flooded extensively. Robert Isnard attributed the flooding to the new storm sewer system. One or both of the Isnards' businesses were flooded again on July 13, 1986, September 16, 1986, September 29, 1986, September 30, 1986, October 3, 1986, June 10, 1989, August 19, 1989, August 20, 1989, June 14, 1990, June 15, 1990, April 18, 1993, and May 18, 1993.

In March 1986, Robert consulted an attorney about filing an action to recover damages for injuries suffered in the floods.

The petition against the City was originally filed on October 9, 1991. The Isnards asserted claims against the City on the grounds of negligence, nuisance, and inverse condemnation. The City filed a motion for summary judgment, claiming (1) the negligence and nuisance claims were barred by K.S.A. 60-513 and (2) the inverse condemnation claim had no basis in fact. The district court granted the City's motion for summary judgment, and the Isnards appealed, but raised only the issue of whether their negligence and nuisance claims for damages incurred during the 2 years before filing the action were time barred. The Court of Appeals determined that the Isnards' claims for flood damages to inventory, other personal property and equipment stored in their buildings, and to the insulation and structural integrity of the buildings were temporary and not barred. The claims for diminution in property value were permanent damages, and thus time barred. The district court was affirmed on the permanent damage claims. The City petitioned for review on the issue of whether the Isnard's temporary damages were time barred. The Isnards did not cross-petition for review on the permanent damages issue.

## DISCUSSION

Summary judgment is appropriate when all of the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See *Kerns v. G.A.C., Inc.*, 255 Kan. 264, 268, 875 P.2d 949 (1994). When the only question presented is a question of law, summary judgment is proper. *Fletcher v. Nelson*, 253 Kan. 389, 391, 855 P.2d 940 (1993). To preclude summary judgment, the party opposing the motion must come forward with evidence to establish a dispute as to a fact that is material to the conclusive issues in the case. *Kerns*, 255 Kan. at 268.

The Isnards assert that summary judgment was improper because the district court erred in analyzing the law applicable to temporary damages, not because of any disputed material fact.

### Liability of City

The universal rule is that municipal corporations are liable for

damages occasioned to private property from the overflow of surface waters resulting from the fault of the municipality, its officers, and its agents. *Welch v. City of Kansas City*, 204 Kan. 765, 768, 465 P.2d 951 (1970) (citing *King v. City of Kansas City*, 58 Kan. 334, 49 Pac. 88 [1897]).

The City owed a duty not to cause an overflow of surface water onto the Isnards' property and is liable for damages.

The parties agree that the applicable statute of limitations is K.S.A. 60-513(a)(4), which provides that the action must be brought within 2 years. K.S.A. 60-513(b) provides in relevant part:

"[T]he causes of action listed in subsection (a) shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party."

In *Roe v. Diefendorf*, 236 Kan. 218, 222, 689 P.2d 855 (1984), we interpreted K.S.A. 60-513(b) as follows:

"We hold the use of the term 'substantial injury' in the statute does not require an injured party to have knowledge of the full extent of the injury to trigger the statute of limitations. Rather, it means the victim must have sufficient ascertainable injury to justify an action for recovery of the damages, regardless of extent."

We have considered whether the injury was permanent or temporary as the determinative factor in commencing the statute of limitations in damage actions from flooding caused by construction. *Johnson v. Board of Pratt County Comm'rs*, 259 Kan. 305, Syl. ¶ 9, 913 P.2d 119 (1996). "Each case must be considered in its own factual setting." *Olson v. State Highway Commission*, 235 Kan. 20, 24, 679 P.2d 167 (1984).

We most recently addressed the statute of limitations in the context of temporary and permanent damages from flooding in *Johnson*, 259 Kan. 305. Oneita and Clara Johnson owned separate tracts of land downstream from a newly replaced bridge. Each tract sustained erosion damage allegedly because of the widened bridge opening, road elevation, and channel excavation, causing increased water flow in the channel during floods in 1988 and 1991. On review, we affirmed the Court of Appeals, on the statute of limi-

tations issues, but said that Oneita's 1991 flood damages would not be time barred if the trier of fact, on remand, determines that her 1988 flood damages were temporary. 259 Kan. at 330.

> "We question the reasoning of the Court of Appeals in acknowledging that Oneita's 1988 erosion damages were permanent and time barred, while holding that she is not time barred from claiming her 1991 erosion damages. If Oneita suffered permanent damages in 1988, then her cause of action for permanent damages accrued as of that time, and she should have brought her claim for past, present, and future damages at one time within the 2-year statute of limitation. See *McAlister v. Atlantic Richfield Co.*, 233 Kan. 252, Syl. ¶ 8, 662 P.2d 1203 (1983); *Thierer [v. Board of County Commissioners*, 212 Kan. 571, 575, 512 P.2d 343 (1973)]." 259 Kan. at 323.

Although the replacement bridge was a permanent structure, and Oneita's land suffered erosion damage permanent in nature, the county, in 1988, attempted to abate the alleged cause of damage to Oneita's land and made a representation to her concerning its abatement efforts. In addition, the county had not obtained a permit required under K.S.A. 82a-301 before construction of the bridge. Thus, we reasoned that the question of whether Oneita's 1988 flood damages were temporary or permanent remained a material issue of fact. 259 Kan. at 323. Both the Isnards and the City look to *Johnson* for support of their contentions in this case.

Like *Johnson*, this case involves a permanent structure. Unlike *Johnson*, the City never promised or made any remediation or abatement efforts after the many floods. The Isnards have not requested abatement, and at oral argument, their counsel did not suggest it as a realistic possibility. The question of abatability is not a material issue of fact. Even the Isnards assume the whole system would need to be replaced to solve the flooding problem. *Johnson* involved two floods of a river in a 3-year span, one flood being more than 2 years before filing the action. In this case, the Isnards experienced nine floods, all more than 2 years before filing of the action, caused by surface water backing up from the storm sewer after heavy rains between June 1985 and October 1989.

In *McAlister v. Atlantic Richfield Co.*, 233 Kan. 252, 662 P.2d 1203 (1983), plaintiff landowner discovered an excessively high salt content in the water when he drilled a well. He sued oil companies

drilling in the vicinity for pollution damage to his fresh water well. He later filed a second lawsuit against two additional oil companies that had conducted operations near the property in the 1930's and 1940's. The defendants in the second lawsuit moved to dismiss, raising K.S.A. 60-513(a). The district court granted the motion.

McAlister labeled his damages as permanent in the petition. After the district court ruled the damage claim was time barred, McAlister filed a motion to amend his petition to claim the oil pollution damages were temporary and therefore not time barred. The motion was denied. 233 Kan. at 261. We determined that the pollution damages were permanent and time barred. The defendant oil companies had ceased drilling operations decades earlier. We stated in *McAlister*:

"Temporary damages or continuing damages limit recovery for injury that is intermittent and occasional and the cause of the damages remediable, removable, or abatable. Damages are awarded on the theory that the cause of the injury may and will be terminated. Temporary damages are defined as damages to real estate which are recoverable from time to time as they occur from injury. 25 C.J.S., Damages § 2, p. 626.

"Permanent damages are given on the theory that the cause of injury is fixed and that the property will always remain subject to that injury. Permanent damages are damages for the entire injury done—past, present and prospective—and generally speaking those which are practically irremediable. 25 C.J.S., Damages § 2, pp. 622-23. If an injury is permanent in character, all the damages caused thereby, whether past, present, or prospective, must be recovered in a single action." 233 Kan. at 262.

*McAlister* dealt with long-ceased drilling operations resulting in permanent contamination, as compared to the periodic storm sewer flooding in this case.

By 1986, the Isnards had been flooded often because of surface water attributed to the storm sewer system and knew that the situation was not going to change. Robert Isnard estimated that since the first flood of 1985, flooding has occurred with progressively less rainfall. Isnard attributed permanent damage to his property from the construction of the storm sewer as far back as 1985.

Although Isnard knew that the June 4, 1985, flooding was caused by the underground storm sewer system and he believed the system was inadequate, the Isnards continued to keep inventory in

both buildings. They continued to experience flood damage on eight more occasions before October 9, 1989, 2 years before suit was filed. The storm sewer system is a permanent structure. The Isnards did not request abatement in their petition and do not suggest it as a likely possibility. At oral argument, counsel for the Isnards conceded that the City had never promised or agreed to do anything to rectify the problem. The most counsel could say was that the Isnards "hoped and expected" that the City would do something.

A review of the Isnards' prayer in the petition reveals that they are claiming both temporary and permanent damages incurred from the sewer and drainage project constructed by the City, including the following:

"1. Inventory in Chairworld; 2. Real property of Chairworld; 3. Lost income; 4. United Warehouse inventory; 5. Liabilities to renters; 6. United Warehouse real property; 7. Out of pocket expenses; 8. Value of Eight (8) other real property parcels; 9. Loss of miscellaneous due to foreclosure."

The Isnards, in their brief filed in the Court of Appeals, cite two of our cases to advance their claims. In the first case, *Bowen v. City of Kansas City*, 231 Kan. 450, 646 P.2d 484 (1982), Wilcox was contracted to move rock and dirt in a manner that obstructed the natural flow of water in culverts. Wilcox undertook this work between 1962 and 1969 and, upon completion, had no authority or control over the affected property. When the plaintiffs' land was flooded in the mid-1970's, they sued Wilcox, Kansas City, Kansas, and the State Secretary of Transportation. The district court granted Wilcox's motion for summary judgment. We affirmed, ruling that any action against Wilcox accrued at the time the first injury was suffered. Generally, when a nuisance is temporary and abatable, a new cause of action arises with each new injury. In *Bowen*, however, the nuisance was not abatable as to Wilcox because he had neither the ability nor the duty to abate the nuisance. 231 Kan. at 454-55.

In the second case, *Gowing v. McCandless*, 219 Kan. 140, 547 P.2d 338 (1976), the defendant in 1965, obstructed a ditch which provided drainage for plaintiffs' farm ground. Plaintiffs sued in

1972, claiming damages for lost crops in the prior 3 years. Plaintiffs also alleged that defendants violated K.S.A. 82a-301 (Weeks 1969) by failing to obtain a permit to obstruct the watercourse. The trial court awarded damages. On appeal, defendants argued the action was time barred, claiming plaintiffs sought permanent damages. We affirmed the trial court, stating:

"In the instant case the evidence does not show the cause of the injury to be permanent. In many cases injuries have been classified as temporary or recurring in nature when caused by an abatable nuisance or condition, or by defects which can be repaired or remedied at reasonable expense. . . .

. . . .

"[T]he owner of land injured by overflows and poor drainage caused by an abatable condition or nuisance has the right to assume the condition or nuisance will be abated. Here the appellees presented evidence that the obstructions *were not 'permanent.'* That is to say, the obstructions could be removed from the drainage ditch. In a legal sense these obstructions were not 'permanent' because they were not approved by the state. Moreover, the appellees presented evidence that the appellants agreed to examine the drainage ditch and consider removing the obstructions." 219 Kan. at 145. (Emphasis added.)

The obstructions causing the injury were not permanent. Neither *Bowen* nor *Gowing* advances the Isnards' temporary damage claim.

### The Court of Appeals Decision

In considering whether the damages were temporary or permanent, the Court of Appeals identified three factors: "(1) the nature of the causative structure, (2) the nature of the damages, and (3) the ability to determine or estimate damages." These factors are well supported in the case law. Initially, the Court of Appeals acknowledged: "The sewer system constructed by the City in the present case is a permanent and fixed structure that took several years to construct at considerable cost. It is not an abatable nuisance."

The Court of Appeals identified two types of damages occurring between October 1989 and October 1991 that were not damages to the real estate: (1) inventory or personal goods stored in the two flooded buildings, and (2) damage to the physical integrity of the buildings, including replaceable water-soaked sprayed-on insulation. The Court of Appeals observed:

"The evidence shows that the injuries to the personal goods were intermittent, occasional, and temporary. The injuries varied from flood to flood and depended greatly on the level of the flood waters as well as the type, quantity, and nature of the stored goods. Even though the Isnards knew in 1986 that there could be additional injuries to stored goods in the future, the nature and extent of those injuries would have been impossible to determine at that point."

In *McAlister*, 233 Kan. at 264, the fact that the pollution was not abatable (at least for 150 to 400 years) was a key factor in our finding that the plaintiff's damages were permanent and capable of being determined. If the cause of the damage is not abatable, then future damage determination is possible, because the parties can assume that the damage source will always be there and they can calculate monetary damages accordingly.

The Isnards knew by June 1985 and certainly by June 1989 (when rains of 2 inches could result in flooding from the storm sewer) that, at least as to personal property kept in the two buildings, damage from flooding at some point (the next heavy rain) would be a virtual certainty during the time period at issue: October 1989 to October 1991. Anything sitting on the floor of the buildings could be "ascertained" to receive water damage. The Isnards knew that their buildings (and the insulation) would receive water damage with heavy rains and could have estimated the effect that the flooding would have on their furniture and warehouse businesses. As the City points out, the Isnards had control of what property was kept in the buildings during the times when flooding occurred.

Ascertainment should not mean that the Isnards could predict the dates when the flooding will occur or the exact severity of flooding. Before October 1989, the Isnards had enough experience with the floods to gauge how much rain would cause the storm sewer to overflow. In *Thierer*, 212 Kan. at 572-73 (although temporary damages were not preserved as an issue on appeal), we determined that the loss of a low water crossing in 1966 was reasonably ascertainable when plaintiff's levee broke in 1962. Likewise, flood damage to the Isnards' personal property and buildings from October 1989 to October 1991 was reasonably ascertainable before October 1989. Therefore, those damages, despite the label

placed on them by the Isnards, are considered as permanent damages capable of being determined before commencement of the limitations period.

Based on the record in this case, we agree with the Court of Appeals that the storm sewer is a permanent, non-abatable nuisance. Under *McAlister*, the Isnards' claims for all damages, past, present, and future, should have been brought in one action within 2 years of the time when those damages were capable of being determined.

We reverse the Court of Appeals on the temporary damages issue and affirm the district court.