**Ralph E. ACKER, et al., Plaintiffs,**

v.

**BURLINGTON NORTHERN AND SANTA FE RAILWAY COM-PANY, Defendant.**

Civ.A. No. 00–2487–GTV.

United States District Court,
D. Kansas.

May 22, 2003.

**646**

Steven R. McConnell, James F. McMahon, McConnell & McMahon, Lenexa, KS, for plaintiffs.

K. Paul Day, Patrick N. Fanning, Lathrop & Gage L.C., Todd E. Hilton, Stueve Helder Siegel LLP, Kansas City, MO, for defendant.

### MEMORANDUM AND ORDER

WAXSE, United States Magistrate Judge.

Pending before the Court is Plaintiffs' Motion to Amend the Complaint (doc. 49). For the reasons set forth below, the Court will deny in part and grant in part the motion.

## I. Background Information

This is a negligence action in which Plaintiffs seek monetary damages for alleged property damage resulting from flooding that occurred on their property on October 4, 1998. On October 2, 2000, Plaintiffs filed a "Petition for Negligence" (Petition) in the District Court of Wyandotte County, Kansas,[1] in which Plaintiffs allege a single cause of action for negligence. Defendant removed the action to this Court. Plaintiffs now seek leave to amend their single-count negligence petition to allege various new causes of action for negligence, trespass, nuisance, unlawful taking, and strict liability. They also seek leave to increase their claim for actual damages to more than fifteen million dollars[2] and to plead a claim for punitive damages in the amount of fifty million dollars.

Defendant opposes the motion to amend on the grounds that (1) the motion is untimely, (2) Defendant will suffer undue prejudice if amendment is allowed, and (3) amendment would be futile because the new claims are barred by the applicable statutes of limitations. Defendant also opposes Plaintiffs' request to amend to add a claim for punitive damages, asserting that Plaintiffs' claim for fifty million dollars exceeds the five-million dollar cap placed on punitive damages awards under K.S.A. 60–3701(e).

## II. Standard for Ruling on a Motion to Amend

Rule 15 of the Federal Rules of Civil Procedure allows a party to amend the party's pleading once as a matter of course before a responsive pleading is served.[3] Subsequent amendments are allowed only by leave of court or by written consent of the adverse party.[4] Leave to amend, however, is to be "freely given when justice so requires,"[5] and the Supreme Court has emphasized that "this mandate is to be heeded."[6] The decision to grant leave to amend, after the per-

---

1. See Ex. A attached to Notice of Removal (doc. 1).

2. In their Petition, the individual Plaintiffs assert a claim for actual damages exceeding seventy-five thousand dollars. Plaintiff Everseal Gasket, Inc. asserts a similar claim.

3. Fed.R.Civ.P. 15(a).

4. Id.

5. Id.

6. Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

missive period, is within the district court's discretion and will not be disturbed absent an abuse of that discretion.[7]

Leave to amend should be denied when the court finds "undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."[8] In addition, the court may properly refuse leave to amend if a party knew or should have known of the facts upon which the proposed amendment is based but failed to include the allegations in its original pleading.[9]

## III. Futility of Amendment Based on Statute of Limitations Grounds

### A. Applicable Law

Defendant asks the Court to deny Plaintiffs leave to amend on the basis of futility, *i.e.*, that the proposed new claims are barred by the applicable statutes of limitations. It is well settled that a court may deny a motion to amend as futile if the proposed amendment would not withstand a motion to dismiss or if it otherwise fails to state a claim.[10] Thus, the court must analyze a proposed amendment as if it were before the court on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Dismissal pursuant to Rule 12(b)(6) is proper when the face of the complaint "indicates the existence of an affirmative defense such as noncompliance with the limitations period."[11]

Defendant contends that Plaintiffs' proposed claims are governed by the statute of limitations found in K.S.A. 60–513(a). That statute provides a two-year limitations period

for trespass, unlawful taking, and any other actions for injury to the rights of another (excluding contract actions) that are not otherwise provided for in the statutes.[12] Courts have applied this two-year statute of limitations to claims of negligence[13] and nuisance.[14]

According to Defendant, Plaintiffs' proposed causes of action accrued on October 4, 1998, and therefore must have been asserted by October 4, 2000. Defendant argues that because Plaintiffs did not file the instant motion to amend to add these claims until December 2, 2002, the claims are time-barred.

Plaintiffs do not dispute the applicability of the two-year statute of limitations and do not assert that any other statute of limitations applies. Plaintiffs' sole argument is that their proposed amendments are not time-barred because they relate back to the date of filing of the original Petition, i.e., to October 2, 2000.

Plaintiffs assert that the Court should apply the relation-back provision of K.S.A. 60–215(c), and Kansas state court cases applying that statute, to determine whether the proposed amendments relate back. The Court disagrees. It is well settled that the relation back of amendments to pleadings in a federal court action is governed by the Federal Rules of Civil Procedure.[15] Thus, this Court will apply the Federal Rules of Civil Procedure and federal case law rather than Kansas statutory and case law to determine whether the proposed amendments relate back.

Federal Rule of Civil Procedure 15(c)(2) provides that "[a]n amendment of a pleading

7. *Woolsey v. Marion Labs., Inc.*, 934 F.2d 1452, 1462 (10th Cir.1991).

8. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir.1993).

9. *Steinert v. Winn Group, Inc.*, 190 F.R.D. 680, 684 (D.Kan.2000) (citing *State Distrib., Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416 (10th Cir.1984)).

10. *Lyle v. Commodity Credit Corp.*, 898 F.Supp. 808, 810 (D.Kan.1995) (citing *Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir.1992)).

11. *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1311 n. 3 (10th Cir.1999).

12. K.S.A. 60–513(a).

13. *See, e.g., Resolution Trust Co. v. Scaletty*, 257 Kan. 348, 353, 891 P.2d 1110, 1114 (1995) (applying K.S.A. 60–513(a)(4)).

14. *See, e.g., Isnard v. City of Coffeyville*, 260 Kan. 2, 5, 917 P.2d 882, 885 (1996) (applying K.S.A. 60–513(a)(4)).

15. *See, e.g., In re Estate of Kout v. U.S.*, 241 F.Supp.2d 1183, 1191 (D.Kan.2002); *Lemmons v. Board of County Comm'rs of Brown County*, No. 00–2297–CM, 2002 WL 370227, at *2 (Feb. 21, 2002) (citations omitted).

relates back to the date of the original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." [16] It is within the district court's sound discretion to decide whether a new claim arises out of the same "conduct, transaction or occurrence." [17]

The premise underlying Rule 15(c) is that the defendant, "once notified of pending litigation over particular conduct or a certain transaction or occurrence ... has been given all the notice required for purposes of the statute of limitations." [18] "The linchpin to Rule 15(c) is notice before the limitations period expires." [19] In other words, a defendant is not deprived of the protection of the statute of limitations if the original complaint fairly discloses the general fact situation out of which the new claims arise. [20]

Generally speaking, amendments are deemed to relate back "if they only flesh out the factual details, change the legal theory, or add another claim arising out of the same transaction, occurrence or conduct." [21] Conversely, amendments do not relate back if they "are based on entirely different facts, transactions, and occurrences." [22] "[I]f the alteration of the original statement is so substantial that it cannot be said that defendant was given adequate notice of the conduct, transaction, or occurrence that forms the basis of the claim or defense, then the amendment will not relate back and will be time

barred if the limitations period has expired." [23]

## B. Summary of the Parties' Arguments and the Proposed Amendments

Defendant argues that the proposed amendments arise out of different conduct and occurrences. Plaintiff's initial Petition alleges that Defendant negligently placed eighteen of its railcars onto its tracks running along Turkey Creek to prevent the tracks from being moved by an increased flow of water caused by a heavy rain. [24] The Petition alleges that by placing the railcars on the track, Defendant altered the natural course and flow of Turkey Creek. [25] This diversion of the water caused the Creek to overflow and flood Plaintiffs' land and factory. [26] The Petition asserts that the flooding depreciated the value of Plaintiff's property and damaged the inventory and equipment in Plaintiffs' factory. It also asserts that the flooding caused Plaintiffs' factory to lose profits. [27]

The proposed Amended Complaint contains allegations similar to those pled in the Petition regarding Defendant placing its railroad cars on the track during the heavy rain of October 4, 1998, allegedly causing Turkey Creek to overflow and flood Plaintiffs' land and factory. [28] The proposed Amended Complaint, however, adds numerous allegations and claims relating to Defendant's design, construction and maintenance of a bridge over Turkey Creek (referred to as the "4.4 mile bridge") and the railroad track, embank-

16. Fed.R.Civ.P. 15(c).

17. *Kidwell v. Board of County Comm'rs of Shawnee County,* 40 F.Supp.2d 1201,1217 (D.Kan. 1998) (citing *Wilson v. Fairchild Republic Co., Inc.,* 143 F.3d 733, 738 (2d Cir.1998)).

18. *Marsh v. Coleman Co., Inc.,* 774 F.Supp. 608, 612 (D.Kan.1991) (citing *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 149 n. 3, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984)).

19. *Kidwell,* 40 F.Supp.2d at 1216.

20. *Id.* (citations and quotations omitted).

21. *Marsh,* 774 F.Supp. at 612 (D.Kan.1991) (citing 3 James W. Moore & Richard D. Freer, *Moore's Federal Practice,* ¶ 15.15[2] at 15–148– 15–151).

22. *Marsh,* 774 F.Supp. at 612 (citing *Holmes v. Greyhound Lines, Inc.,* 757 F.2d 1563, 1566 (5th Cir.1985)).

23. 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure,* § 1497 (2d ed.1990).

24. Petition, ¶ 6.

25. *Id.,* ¶¶ 7, 9.

26. *Id.*

27. *Id.,* ¶ 9, Wherefore Clause.

28. Proposed Amended Complaint, ¶ 40.

ments, culverts, and roadbed along the bridge. More specifically, Plaintiffs allege that:

Defendant, BN, wrongfully, willfully, and negligently constructed and/or maintained the 4.4 mile bridge, its track, embankments, culverts and the roadbed along and over said bridge so as to obstruct and impede the natural and foreseeable flow of water in times of foreseeable rainfall and water flow, and said structures diverted foreseeable water flows from its property, thereby causing and contributing to cause said waters on October 4, 1998, to back up and accumulate on the upstream side of said bridge and thereafter flow upon Plaintiffs' lands damaging personal property of Plaintiff's businesses and inventories, damaging the structures located thereon, and causing other damages as alleged hereafter.[29]

The proposed Amended Complaint further alleges that Defendant breached its duty to design and maintain its improvements and structures so as to accommodate the flooding [30] and that Defendant negligently failed to construct and maintain suitable openings through its roadbed at the 4.4 mile bridge to afford sufficient outlets to drain and carry off the waters in Turkey Creek.[31] Plaintiffs claim that the 4.4 mile bridge and construction of embankments across Turkey Creek created a nuisance.[32] They also claim that Defendant placed concrete blocks on its property around the 4.4 mile bridge to act as an abutment along Turkey Creek and created a nuisance that caused water to back up on Plaintiffs property on October 4, 1998.[33] Plaintiffs further claim that Defendant filed "to perform the necessary risk management assessments to determine the appropriate construction and/or maintenance necessary for the protection of the public and adjoining property owners." [34] In addition, they allege that Defendant failed to use ordinary care when it operated its train on October 4, 1998 by allowing it to proceed over the flooded tracks.[35]

Further, the proposed Amended Complaint pleads claims for trespass based on flooding of Plaintiffs' property allegedly caused by (1) Defendant's construction and maintenance of the 4.4 mile bridge and its approaches, and (2) Defendant's placement of the railroad cars on the tracks.[36]

In addition to making these claims for negligence, nuisance, and trespass, Plaintiffs assert claims for unlawful taking and strict liability, based on some, if not all, of the above alleged conduct.[37] Plaintiffs claim the same type of actual damages as claimed in the Petition, including lost profits, damage to inventory and equipment located in the factory, and damage to the factory and structures.[38] Plaintiffs have, however, increased their claim for actual damages to more than fifteen million dollars.[39] They also assert for the first time a claim for punitive damages.[40]

The question this Court must decide is whether the new, proposed claims arise out of the same conduct, transaction, or occurrence asserted in the Petition so as to give Defendant fair notice of litigation arising out of the specific factual situations asserted in the proposed Amended Complaint.[41] If the Court answers this question in the affirmative, the Court must hold that the proposed claims relate back to the filing of the original Petition and that the claims are not time-barred.[42]

29. *Id.,* ¶ 18.

30. *Id.,* ¶ 19.

31. *Id.,* ¶ 22.

32. *Id.,* ¶¶ 41–42.

33. *Id.,* ¶¶ 27–30.

34. *Id.,* ¶ 33.

35. *Id.,* ¶ 35.

36. *Id.,* ¶¶ 44, 47.

37. *Id.,* ¶¶ 44–48.

38. *Id.,* ¶¶ 40.

39. *Id.,* Wherefore Clause.

40. *Id.*

41. *Spillman v. Carter,* 918 F.Supp. 336, 340 (D.Kan.1996).

42. *Kidwell v. Board of County Comm'rs of Shawnee County,* 40 F.Supp.2d 1201, 1217 (D.Kan. 1998) (quoting *Marsh v. Coleman Co.,* 774 F.Supp. 608, 612 (D.Kan.1991)).

Defendant argues that Plaintiffs' new, proposed claims do not arise out of the same conduct, transaction, or occurrence asserted in the original Petition. The Petition alleges only one act of conduct by Defendant—that of negligently placing its railroad cars on the tracks during the heavy rain of October 4, 1998 so as to alter the flow of Turkey Creek.[43] Defendant asserts, and the Court agrees, that the proposed Amended Complaint alleges many completely separate and different actions or conduct on the part of Defendants, including the conduct of Defendant in designing, constructing, and/or maintaining the 4.4 mile bridge, railroad track, embankments, culverts, and roadbeds, and Defendant placing concrete blocks around the 4.4 mile bridge. The Petition makes no allegations regarding the 4.4 mile bridge, the embankments, culverts, roadbeds, or concrete blocks, other than to merely state that "[f]or many years prior to filing this action, the Defendant owned and maintained railroad tracks and bridges that also ran generally along Turkey Creek, and generally to the South of Plaintiffs' property and factory."[44] And then, the Petition asserts no causes of action based on Defendant's ownership or maintenance of the tracks and bridges.

### C. The Supreme Court's Decision in *Tiller v. Atlantic Coast Line Railroad*

One could argue that the new proposed allegations are all part of the events that led to the same injury alleged in the initial Petition, i.e., the flooding of Plaintiffs' property, and that they should therefore relate back. One could also argue that the United States Supreme Court's decision in *Tiller v. Atlantic Coast Line Railroad Company*,[45] supports such a conclusion.[46] This Court, however, finds that *Tiller* is distinguishable from the instant case. In *Tiller*, the wife of a railroad employee who was killed on the job when struck by a railroad car sued the railroad under the Federal Employers' Liability Act. In her initial complaint, the plaintiff alleged that her husband's death was caused by the defendant's failure to keep the head car properly lighted, to provide a proper lookout for her husband, to warn him of the approaching train, and to warn him of a sudden change in the method of shifting cars.[47] The plaintiff amended her complaint, adding a claim for violation of the Federal Boiler Inspection Act, charging that the locomotive (as opposed to the head car) was not properly lighted as required by the Act.[48] Applying Rule 15(c), the Supreme Court held that the amended complaint related back.[49] The Court explained:

> Both of [the complaints] related to the same general conduct, transaction and occurrence which involved the death of the deceased.... The cause of action now, as it was in the beginning, is the same—it is a suit to recover damages for the alleged wrongful death of the deceased.... There is no reason to apply a statute of limitations when, as here, the respondent has had notice from the beginning that petitioner was trying to enforce a claim against it because of the events leading up to the death of the deceased in the respondent's yard.[50]

Thus, under *Tiller*, one could argue that as long as the ultimate injury or harm remains the same, the proposed amendments should be deemed to relate back. Plaintiff in this case could thus argue that because the ultimate damage, i.e., the flooding, is the same in both the Petition and proposed Amended Complaint, all of the proposed amendments should relate back, regardless of whether they differ from the conduct alleged in the Petition. In other words, regardless of the

43. Petition, ¶ 7.

44. *Id.*, ¶ 5.

45. 323 U.S. 574, 65 S.Ct. 421, 89 L.Ed. 465 (1945).

46. Although Plaintiffs do not cite or rely upon *Tiller*, the Court finds it necessary to discuss its application to this case.

47. *Id.* at 580–81, 65 S.Ct. 421.

48. *Id.*

49. *Id.* at 581, 65 S.Ct. 421.

50. *Id.*

new facts and conduct alleged, relation back should be allowed because the underlying claim of damage to Plaintiffs' property and factory due to the flooding remains the same.

The Court does not interpret *Tiller* as standing for this proposition, and, furthermore, finds that the facts of *Tiller* are distinguishable from this case. *Tiller* concerned factual allegations that were much more closely related in time and in transaction to the original allegations than the amendments proposed here. All of the allegations in *Tiller* were closely related in time and in scope to the accident that killed the plaintiff's husband. The new allegation that the railroad had failed to properly light the *locomotive* was almost identical to the previously pled allegation that the railroad had failed to light the *head* car.

This Court holds that *Tiller* stands for the proposition that a claim adding new factual allegations relates back to the original complaint where a sufficiently close relationship exists between the original and the new claims. In such a case, the allegations all relate to the same occurrence, out of which the litigation arose, and Rule 15(c)'s crucial notice requirement is met. In this regard, the temporal proximity of the facts is relevant, although not always dispositive.[51] Also relevant is the general character of the sets of factual allegations and how they are part of the events leading to the originally alleged injury.[52]

## D. Application of the Law to Plaintiffs' Proposed Claims

With these standards in mind, the Court will now decide which of the proposed claims relate back.

### 1. Proposed claims concerning Defendant's design, construction, and maintenance of the 4.4 mile bridge, tracks, and other items; placement of concrete abutments; and failure to perform risk management assessments

■ The Court finds virtually no temporal proximity between the facts and the negligence claim originally pled in the Petition and the new facts and claims relating to (1) Defendant's design, construction, and maintenance of the 4.4 mile bridge and the railroad track, embankments, culverts, and roadbed around the bridge, (2) Defendant's placement of the concrete abutments along the track, and (3) Defendant's failure to perform the necessary risk management assessments regarding the bridge's construction and maintenance. Although the Court does not know the exact dates when the 4.4 mile bridge, track, and other items were designed and constructed, their design and construction obviously took place long before the railroad cars were parked on the tracks. The same is true with respect to Defendant performing or failing to perform any risk management assessments in connection with its construction and maintenance of the bridge. Indeed, Plaintiffs aver in their Petition that Defendant owned and maintained the railroad tracks and bridges running along Turkey Creek "for *many years* prior to [Plaintiffs] filing this action."[53]

Furthermore, the newly alleged conduct of Defendant in improperly designing, constructing, and maintaining the 4.4 mile bridge, track and other items, in placing the concrete abutments around the bridge, and in failing to perform the necessary risk management assessments, is obviously separate and distinct from Defendant's alleged conduct in parking the railroad cars on the track.[54] In order to recover on their new

---

51. *In re Olympia Brewing Co. Sec. Litig.,* 612 F.Supp. 1370, 1373 (N.D.Ill.1985).

52. *Id.*

53. Petition, ¶ 5 (emphasis added).

54. *See Moore v. Baker,* 989 F.2d 1129, 1132 (11th Cir.1993) (holding that a patient's proposed claims that the defendant surgeon was negligent during and after surgery did not arise out of the same conduct, transaction, or occurrence as the

initial complaint alleging that defendant failed to inform her that certain therapy was available as an alternative to surgery; the initial and proposed claims occurred at different times and involved separate and different conduct on the part of the defendant). *See also Dahn v. U.S.,* 127 F.3d 1249, 1251–52, n. 1 (10th Cir.1997) (citing *Moore* with approval and upholding denial of motion to amend where proposed amended complaint asserted "a distinctly different claim;" taxpayer plaintiff originally brought quiet title

claims relating to these acts, Plaintiffs will have to prove completely different facts than they would otherwise have been required to prove to recover on the single negligence claim asserted in the original Petition.[55] Likewise, Defendant will have to gather and present completely different evidence to defend itself against these new claims.

Moreover, the Court finds that the critical issue of notice to Defendant is missing with respect to these new claims. The Court finds nothing in the Petition to put Defendant on notice that it might have to defend itself against claims relating to the design, construction, or maintenance of the 4.4 mile bridge, track or other items, relating to its placement of the concrete blocks around the bridge, or relating to the any risk management assessments involving its construction and maintenance of the bridge. The Petition merely focuses on Defendant's allegedly negligent actions in placing the train on the tracks in an attempt to keep Defendant's railroad cars from being moved by the increased flow of water from Turkey Creek.[56]

In light of the above, the Court holds that the proposed amendments concerning the alleged acts of Defendant in improperly designing, constructing, and maintaining the 4.4 mile bridge, track and other items, in placing the concrete abutments around the bridge, and in failing to perform the necessary risk management assessments, do not arise out of the same conduct, transaction, or occurrence set forth the original Petition. These amendments therefore do not relate back under Fed.R.Civ.P. 15(c)(2) and are time-barred. The Court will therefore deny Plaintiffs' Motion to Amend the Complaint to the extent Plaintiff seeks to add claims based on these

acts of Defendant. This would include all of the proposed nuisance claims [57] and some of the proposed negligence, trespass, strict liability, and unlawful taking claims.[58] The Court will also deny the motion to amend to increase the actual damages claim and to add a punitive damages claim to the extent those claims are predicated on these acts.

### 2. Proposed claim that Defendant failed to use ordinary care when operating its train

■ Plaintiffs also assert a proposed negligence claim based on Defendant's failure to use ordinary care in operating its train and allowing it to proceed over the flooded tracks on October 4, 1998.[59] The Court finds that this claim is sufficiently related in time and conduct to relate back to Plaintiff's original claim that Defendant negligently placed its railroad cars on the track. The Court therefore holds that this claim relates back and is not time-barred.

### 3. Proposed trespass claims

As noted above, one of Plaintiffs' proposed trespass claims is based on Defendant's construction and maintenance of the 4.4 mile bridge.[60] The Court has held that this claim is time-barred. Plaintiffs, however, assert another trespass claim in the proposed Amended Complaint, one that is based on Defendant's "abandonment" of its railroad cars on the track on October 4, 1998.[61] This trespass claim is based on factual allegations virtually identical to those pled in the initial Petition. The cause of action, however, sounds in trespass rather than negligence.

action against the IRS objecting to enforcement of tax penalty and then attempted to amend to add claim objecting to collection efforts resulting in the sale of her property).

**55.** *Moore*, 989 F.2d at 1132.

**56.** Petition, ¶¶ 6, 7.

**57.** The proposed nuisance claims concern only the construction of the 4.4 mile bridge, its approaches and embankments. The proposed Amended Complaint alleges: (1) "The construction of the 4.4 mile bridge and its approaches across the channel of Turkey Creek, without an

opening sufficient to carry all the water through;" and (2) "The construction of embankments ... without opening sufficient to carry all the water through ... renders such embankments a nuisance ...." Proposed Amended Complaint, ¶¶ 41—42.

**58.** These claims as they pertain to other factual allegations are discussed below.

**59.** *Id.,* ¶¶ 34–36.

**60.** *Id.,* ¶ 44.

**61.** *Id.,* ¶ 47.

■ It is well settled that "[t]he fact that an amendment changes the legal theory on which the lawsuit initially was brought is of no consequence if the factual situation upon which the actions depends remains the same and has been brought to defendant's attention by the original pleading." [62]  Here, the facts remain the same and only the legal theory has changed. Accordingly, the Court holds that the proposed trespass claim based on Defendant's abandonment of the railroad cars relates back to the date of filing of the original Petition.

*4. Proposed unlawful taking and strict liability claims*

■ Plaintiffs' proposed Amended Complaint asserts claims for strict liability and unlawful taking. It is unclear, however, what specific acts of Defendant constitute the claimed unlawful taking [63] or what acts Plaintiffs claim Defendant should be held strictly liable for.[64] To the extent Plaintiffs are alleging that the placement or abandonment of Defendant's railroad cars on the tracks forms the basis of the unlawful taking and strict liability claims, the Court holds that those claims relate back. These proposed amendments merely allege new legal theories based on the same factual allegations.

**E. Summary of the Court's Ruling Regarding Futility of Amendment Based on Statute of Limitations Grounds**

To summarize, the Court holds that Plaintiffs' proposed claims relating to the following do not relate back and that amendment so as to allow those claims would be futile: (1) Defendant's design, construction, and maintenance of the 4.4 mile bridge and the railroad track, embankments, culverts, and roadbed around the bridge, (2) Defendant's placement of the concrete abutments along the track, and (3) Defendant's failure to perform risk management assessments regarding the bridge's construction and maintenance. This would include all of the proposed nuisance claims and some of the proposed negligence, trespass, strict liability, and unlawful taking claims. The Court will deny the motion to amend as to those claims. The Court will also deny the motion to amend to the extent Plaintiffs base their increased claim for actual damages and their punitive damages claim on those time-barred allegations.

The Court will grant the motion to amend to the extent Plaintiffs seek to add the following: (1) negligence claim based on Defendant's failure to use ordinary care in operating its train and allowing it to proceed over the flooded track; (2) trespass claim based on Defendant's abandonment or placing of its railroad cars on the track; and (3) unlawful taking and strict liability claims to the extent Plaintiffs are alleging that the placement or abandonment of Defendant's railroad cars on the track forms the basis of the unlawful taking and strict liability claims. The Court will also grant the motion to amend to increase the claim for actual damages, but only to the extent the amended damages claim is predicated on claims that are not time-barred.

**62.** 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 1497 (2d ed.1990). *See also Southern Colo. Prestress Co. v. Occupational Safety & Health Review Comm'n*, 586 F.2d 1342, 1346 (10th Cir. 1978) (amendment alleging violation of different OSHA standard related back to filing of original complaint where amendment alleged same basic facts, circumstances, and omissions complained of in original complaint); *Spillman v. Carter*, 918 F.Supp. 336, 340 (D.Kan.1996) (proposed Title VII and ADA claims related back to filing of original claims for wrongful constructive discharge and breach of covenant of good faith and fair dealing, where factual allegations of initial complaint were the same as those giving rise to the proposed claims).

**63.** The proposed Amended Complaint generally alleges that "Defendants' action constituted an unlawful taking of the Plaintiffs' property," and that "Defendant deprived Plaintiffs of their property without due process of law and without just compensation in violation of the United State's [sic] Constitution." Proposed Amended Complaint, ¶¶ 48–49.

**64.** The proposed Amended Complaint avers that "Defendant should be held strictly liable for the Plaintiffs' damages," and that "Defendant cannot injure the property of the Plaintiffs without rendering itself liable for the resultant damage." Proposed Amended Complaint, ¶¶ 45, 46.

## IV. Futility of Punitive Damages Amendment Based on Statutory Cap

Defendant asks the Court to deny the motion to amend to add a punitive damages claim totaling fifty million dollars. Defendant argues that leave to amend should be denied to the extent the proposed claim exceeds the five million dollar statutory cap set forth in K.S.A. 60–3701(e).

The Court does not agree. As Plaintiffs point out, K.S.A. 60–3701(f) provides an exception to the statutory cap. It states:

> In lieu of the limitation provided by subsection (e), if the court finds that the profitability of the defendant's misconduct exceeds or is expected to exceed the limitation of subsection (e), the limitation on the amount of exemplary or punitive damages which the court may award shall be an amount equal to 1½ times the amount of profit which the defendant gained or is expected to gain as a result of the defendant's misconduct.[65]

The Court questions whether Plaintiffs will be able to establish that the profitability of Defendant's alleged misconduct exceeds the limitation set forth in subsection (e). The issue before this Court, however, is not whether Plaintiffs will ultimately prevail on their claims for punitive damages, but whether they are entitled to offer evidence to support their allegations.[66] The Court will therefore grant Plaintiffs leave to amend to add their punitive damages claims. The Court emphasizes, however, as discussed in Part III.D.1, *supra*, that the punitive damage claim is to be based only on those causes of action that are not time-barred.

## V. Timeliness of the Motion to Amend and Prejudice to Defendant

■ The Court will now proceed to examine whether other grounds exist to deny Plaintiffs leave to amend those claims that relate back to the date of the original filing. Defendant argues that amendment should be denied because the motion to amend was not timely filed and because Defendant will suffer prejudice if the amendments are allowed at this stage of the litigation.

Prejudice under Rule 15 means "undue difficulty in defending a lawsuit because of a change of tactics or theories on the part of the other party."[67] The party opposing the amendment has the burden of showing prejudice.[68]

The Court finds that Defendant has failed to show prejudice that is sufficient to preclude the proposed amendments. The Court is allowing only those amendments that relate back to the original claims, and, thus, the scope and nature of this case has not been radically altered. The mere fact that Plaintiffs' actual damages claim has increased and a punitive damages claim has been added is insufficient to show that Defendant faces "undue difficulty" in defending the lawsuit.

Moreover, the Court does not find that the amendments should be denied based on untimeliness. The Court recognizes that this case has been on file since October, 2000, and that this motion was not filed until December 2, 2002. While the Court certainly does not encourage such delay, the Court cannot find that the delay in this case justifies denying leave to amend. The motion to amend was filed within the deadline for filing motions to amend.[69] Granting Plaintiffs leave to amend will not significantly delay this action nor will it compromise any of the deadlines set forth in the Scheduling Order. Discovery is not set to close until September 1, 2003. The pretrial conference is scheduled for September 15, 2003, and the case is on the January 6, 2004 trial calendar. This schedule provides Defendant with ample time to conduct discovery regarding these new allegations

---

65. K.S.A. 60–3701(f).

66. *Beach v. Mutual of Omaha Ins. Co.*, 229 F.Supp.2d 1230, 1234 (D.Kan.2002) (citations omitted).

67. *Heslop v. UCB, Inc.*, 175 F.Supp.2d 1310, 1313 (D.Kan.2001) (citing *LeaseAmerica Corp. v. Eckel*, 710 F.2d 1470, 1474 (10th Cir.1983); *Si-* *thon Maritime Co. v. Holiday Mansion*, 177 F.R.D. 504, 508 (D.Kan.1998)).

68. *Schmitt v. Beverly Health and Rehab. Serv's, Inc.*, 993 F.Supp. 1354, 1365 (D.Kan.1998) (citing *Beeck v. Aquaslide 'N' Dive Corp.*, 562 F.2d 537, 540 (8th Cir.1977)).

69. *See* Scheduling Order (doc. 48), ¶ III.a.

and to prepare for the pretrial conference and trial.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Amend the Complaint (doc. 49) is denied in part and granted in part, as set forth herein.

**IT IS FURTHER ORDERED** that Plaintiffs shall revise their proposed Amended Complaint so as to comply with this Order. Plaintiffs shall file and serve their Amended Complaint within *ten (10) days* from the date of filing of this Order. Defendant shall plead in response to the Amended Complaint as set forth in D. Kan. Rule 15.1(a).

**IT IS SO ORDERED.**